# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| EO Liquidating, LLC, *et al.*,[1] | Case No. 17-10243 (LSS) |
| Debtors. | (Jointly Administered) |
| SPORTSDIRECT.COM RETAIL LTD. and SDI STORES LLC, | |
| Plaintiffs | Adv. Pro. No. _____ |
| v. | |
| TLG NEWINGTON, LLC, | |
| Defendant | |

## COMPLAINT

Sportsdirect.com Retail Ltd. ("Sportsdirect"), buyer of substantially all of the assets of the above-captioned debtors (the "Debtors") pursuant to the Sale Order (defined below), and SDI Stores LLC ("SDI", together with Sportsdirect, the "Plaintiffs"), bring this Complaint against defendant TLG Newington, LLC ("Landlord"). In support hereof, Plaintiffs allege as follows:

## NATURE OF ACTION

1. This is an action for: (1) a declaration that the Sixth Amendment (defined herein) that was executed in connection with the Debtors' assumption of the Lease (defined herein) and assignment thereof to SDI is an enforceable agreement between SDI and Landlord; or, in the alternative, (2) entry of an Order vacating the Debtors' assumption of the Lease and assignment

---

[1] The Debtors in these chapter 11 cases, along with the last four (4) digits of each Debtor's federal tax identification number, if applicable, are: EO Liquidating, LLC (9164); Subortis Retail Financing, LLC (9065); EM Liquidating, LLC (9553); Subortis IP Holdings, LLC; BS Liquidating, LLC (4389); and BS/EM Liquidating, LLC (9618). The Debtors' executive headquarters are located at 160 Corporate Court, Meriden, CT 06450.

106328757\V-2

of the Lease to SDI, due to Landlord's inequitable conduct in connection with the assumption and assignment of the Lease.

2.  The declaratory relief requested by Plaintiffs is ripe for adjudication because Landlord has sued Plaintiffs in Connecticut state court, seeking to compel Plaintiffs to pay rent in accordance with the pre-amendment terms of the Lease (as such terms existed between <u>the Debtors</u> and Landlord), as though the Lease was not amended by the Sixth Amendment (which provides the agreed terms between <u>SDI</u> and Landlord). *TLG Newington, LLC v. Sportsdirect.com Retail Ltd. and SDI Stores LLC*, Superior Court, Judicial District of New Britain at New Britain Housing Session, State of Connecticut, case no. NBH-CV18-6003701-S (the "<u>Connecticut Complaint</u>").

3.  In the Connecticut Complaint, Landlord alleges that Plaintiffs owe Landlord the sum of $329,977.21 in unpaid rent for the period of May 2017 through December 2017 -- trying to hold Plaintiffs liable for lease terms to which they never agreed. Shockingly, while the Connecticut Complaint contains detailed, historical information regarding the Lease between the Debtors and Landlord, Landlord wholly fails to even advise the Connecticut court as to the existence of the Sixth Amendment -- an agreement Landlord unquestionably executed and delivered, but now disavows.

4.  By this Complaint, Plaintiffs seek to redress bad-faith actions taken by Landlord in connection with the assumption of Landlord's Lease with the Debtors and the assignment thereof to SDI. Plaintiffs are not asking this Court to resolve a post-assignment dispute with Landlord; rather, Plaintiffs ask this Court to declare that the Sixth Amendment is enforceable and governs the terms of the relationship between Plaintiffs and Landlord, consistent with the Sale Order and the proceedings in this case, or, in the alternative, vacate the assumption and

assignment of the Lease due to Landlord's inequitable actions to induce the assumption and assignment of its Lease through false pretenses.

## JURISDICTION AND VENUE

5. Plaintiffs bring this adversary proceeding pursuant to Rules 7001(2), (7) and (9) of the Federal Rules of Bankruptcy Procedure and 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

6. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and 1409. The above-captioned case is related to this action and is currently pending before this Court. None of the exceptions set forth in 28 U.S.C. § 1409 apply.

7. Pursuant to Del.Bankr.L.R. 7008-1, Plaintiffs affirm their consent to the entry of final orders or judgments by the Court if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## THE PARTIES

8. Sportsdirect is an England and Wales private limited company that, in accordance with the terms of the Asset Purchase Agreement approved by the Sale Order, as well as pursuant to other Orders of this Court, purchased substantially all of the assets of the Debtors. Sportsdirect's operations include an address at Unit A, Brook Park East, Shirebrook, NG20 8RY, United Kingdom.

9. SDI is a Delaware limited liability company that is the designee and assign of Sportsdirect. SDI's operations include an address at 160 Corporate Court in the Town of Meriden, County of New Haven and State of Connecticut.

10. Landlord is a Connecticut limited liability company with an address of 172 Kitts Lane, in the Town of Newington, County of Hartford and State of Connecticut. Landlord owns the Premises (defined below) that is the subject of the Lease and the Sixth Amendment thereto.

## FACTUAL BACKGROUND

11. The Musicland Group, LLC, predecessor in interest to Debtor Bob's Stores, LLC, entered into that certain lease agreement dated as of August 3, 1995 (as subsequently amended, the "Lease") with Pioneer Newington Company, predecessor in interest to Landlord, for approximately 48,884 square feet in the shopping center known as Newington Commons, in Newington, Connecticut (the "Premises").

12. On February 5, 2017 (the "Petition Date"), the Debtors filed voluntary petitions for relief pursuant to chapter 11 of the Bankruptcy Code.

13. On April 19, 2017, this Court entered that certain *Order (I) Authorizing the Sale of Substantially All of the Debtors' Assets Free and Clear of Claims, Liens, Rights, Interests, and Encumbrances, (II) Approving the Asset Purchase Agreement and (III) Authorizing the Debtors to Assume and Assign Certain Executory Contracts and Unexpired Leases* [Docket No. 435, as amended by Docket No. 524] (the "Sale Order"), authorizing, *inter alia*, the sale of substantially all of the Debtors' assets to Sportsdirect. SDI is the designee and assign of Sportsdirect.

14. On May 9, 2017, after extensive negotiations between SDI and Landlord, Landlord executed and delivered to SDI that certain Sixth Amendment to Lease Agreement (the "Sixth Amendment"), a true and correct copy of which is attached hereto as "**Exhibit A**".

15. On May 18, 2017, at SDI's direction, the Debtors filed that certain *Second Supplemental Notice of Assumption and Assignment of Executory Contracts and Leases* (the "Assumption & Assignment Notice") [Docket No. 556] to effectuate assumption of the Lease and assignment to SDI pursuant to the terms of the Sale Order. Sale Order, ¶¶ 26-36. A true and correct copy of the Assumption & Assignment Notice is attached hereto as "**Exhibit B**".

16. On May 18, 2017, Landlord was served a copy of the Assumption & Assignment Notice. [Docket No. 573, Affidavit of Service].

17. In accordance with the Sale Order, the Assumption & Assignment Notice provided notice to Landlord of the Debtors' intent to assume and assign the Lease. Landlord's name, Landlord's address, and a proposed cure amount of $0 were listed in Exhibit A of the Assumption & Assignment Notice. The deadline to object to the Assumption & Assignment Notice and/or the proposed cure amount was May 25, 2017. Landlord never objected to the Assumption & Assignment Notice or the proposed cure amount.

18. Thereafter, SDI performed under and in accordance with the terms of the Sixth Amendment.

19. Of note, the Lease previously obligated the Debtors to pay Landlord monthly rent and other pass-through charges in the amount of approximately $31,000.00 per month. But as amended by the Sixth Amendment, SDI was obligated to pay Landlord $0.00 in monthly rent (through 2018), plus certain pass-through charges for real estate taxes and common area maintenance, payable in advance for the period of July-December 2017, in the sum of $134,000.00 (which was satisfied by application of a credit).

20. For six (6) months after assignment of the Lease, SDI paid $0.00 each month in rent, consistent with the terms of the Sixth Amendment, without any complaint by Landlord.

21. Landlord was aware that monthly payments dropped from approximately $31,000.00 to $0.00, immediately after Landlord's execution and delivery of the Sixth Amendment.

22. Landlord was aware that SDI was performing in accordance with the terms of the Sixth Amendment, immediately after Landlord's execution and delivery of the Sixth Amendment.

23. Both SDI and Landlord treated the Sixth Amendment as fully effective, immediately following Landlord's execution and delivery of the Sixth Amendment and assumption and assignment of the Lease in May 2017.

24. SDI acknowledges that the Sixth Amendment contained the following five conditions to effectiveness: (i) approval of the Sale Order by the Bankruptcy Court; (ii) assumption of the Lease by Debtors; (iii); assignment of the Lease by Debtors to SDI; (iv) the closing of the transactions contemplated by the Asset Purchase Agreement; and (v) receipt of written approval of the Sixth Amendment from the Landlord's lender (the fifth condition is referred to herein as the "<u>Lender Consent Condition</u>"). Sixth Amendment, at ¶ 2(a). The first four conditions unquestionably have been satisfied. SDI acknowledges that it has not received confirmation that the Lender Consent Condition has been satisfied, and has been advised by Landlord that Landlord has not satisfied, nor has it taken any action to satisfy, the Lender Consent Condition.

25. Satisfaction of the Lender Consent Condition has at all times been entirely in Landlord's control, and Landlord has taken no actions to satisfy that condition. In fact, when SDI learned Landlord's position that the Lender Consent Condition had not been satisfied,

Landlord thwarted SDI's efforts to satisfy the condition by refusing to permit SDI to communicate with Landlord's lender to do so.

26. Landlord never intended to satisfy the Lender Consent Condition.

27. Had SDI known that Landlord never intended to satisfy the Lender Consent Condition, and instead merely appeared to agree to the Sixth Amendment to induce SDI to become a tenant, SDI would have never directed the Debtors to assume and assign the Lease to it.

28. SDI entered into the Sixth Amendment, and directed the Debtors to assume and assign the Lease, based on the reasonable belief that Landlord would proceed in good faith under its obligations under the Sixth Amendment.

29. But Landlord lay in wait until late November 2017 to demand that Plaintiffs pay substantial sums in allegedly past-due rent, claiming that Plaintiffs were somehow liable for lease terms that they never agreed to, after Landlord accepted six (6) months of performance precisely under the terms of the Sixth Amendment to which SDI agreed.

30. Landlord has complained that it did not receive a countersigned copy of the Sixth Amendment, suggesting that Landlord did not know that it was effective, until Landlord's admitted receipt of a countersigned copy in November 2017. But Landlord knew that the parties were operating under the Sixth Amendment, given that (i) the Lease was immediately assumed and assigned in May 2017 after Landlord executed and delivered the Sixth Amendment, and (ii) monthly rent payments immediately reduced to $0.00 -- as agreed under the Sixth Amendment -- after Landlord executed and delivered the Sixth Amendment.

31. After accepting six (6) months of performance by SDI under the Sixth Amendment, on November 28, 2017, Landlord sent a demand letter in which Landlord admitted

to executing and delivering the Sixth Amendment, but claimed that: (i) the Sixth Amendment was a nullity, and (ii) Plaintiffs were obligated to perform under the terms of the Lease, without effect of the Sixth Amendment.

32. On December 12, 2017, SDI sent Landlord a letter that, among other things, refuted Landlord's claims that the Sixth Amendment was a nullity and that SDI was obligated to perform under the terms of the Lease, without effect of the Sixth Amendment.

33. On December 12, 2017, Landlord sent another demand letter to SDI declaring a default under the Lease.

34. On December 20, 2017, SDI sent Landlord a letter that, among other things, refuted Landlord's claims that SDI was in default of any obligations owing to Landlord.

35. On December 26, 2017, Landlord prepared the Connecticut Complaint.

36. On January 18, 2018, Landlord filed in the Connecticut court a return of service, attaching the Connecticut Complaint, reflecting its actions to attempt to serve Plaintiffs with the Connecticut Complaint on January 11, 2018 (Plaintiffs reserve all rights to contest the sufficiency of such service).

## COUNT 1

**(Declaration that the Sixth Amendment is Enforceable)**

37. Plaintiffs incorporate and re-allege the allegations set forth in paragraphs 1-36 above, as if fully set forth herein.

38. Bankruptcy courts may interpret and enforce the terms of lease agreements assumed during a bankruptcy case.

39. As of the Petition Date, the Lease was an enforceable contract between the subject Debtor and Landlord.

40. After the Petition Date, SDI and Landlord commenced negotiations concerning whether SDI would be willing to become a tenant of the Premises in connection with Plaintiffs' purchase of substantially all of the Debtors' assets.

41. After extensive negotiations, SDI offered to Landlord to become a tenant in the Premises, provided that the terms of the Sixth Amendment would govern the parties' relationship going forward.

42. On May 9, 2017, Landlord executed the Sixth Amendment and delivered it to SDI, thereby accepting SDI's offer pursuant to the terms of the Sixth Amendment.

43. SDI and Landlord mutually agreed to the terms of the Sixth Amendment.

44. The terms of the Sixth Amendment detail the consideration exchanged by the parties, including the economic terms of the ongoing lease agreement between the parties.

45. Thereafter, on May 18, 2017, consistent with the terms of the Sixth Amendment, at SDI's direction the Debtors filed the Assumption & Assignment Notice to effectuate assumption and assignment of the Lease, which would be subject to the Sixth Amendment.

46. The Sale Order was approved by the Court; accordingly, that condition to effectiveness of the Sixth Amendment has been satisfied.

47. The Debtors assumed the Lease, via the Assumption & Assignment Notice and Sale Order; accordingly, that condition to effectiveness of the Sixth Amendment has been satisfied.

48. The Debtors assigned the Lease to SDI, via the Assumption & Assignment Notice and Sale Order; accordingly, that condition to effectiveness of the Sixth Amendment has been satisfied.

49. The Asset Purchase Agreement closed, as approved by the Sale Order; accordingly, that condition to effectiveness of the Sixth Amendment has been satisfied.

50. Under the doctrine of good faith and fair dealing, Landlord was obligated to take reasonable actions to satisfy the Lender Consent Condition. Satisfaction of the Lender Consent Condition was at all times within Landlord's control. But Landlord took no actions to satisfy the Lender Consent Condition. Landlord even thwarted SDI's efforts to satisfy the Lender Consent Condition by refusing to permit SDI to communicate with Landlord's lender. By Landlord's actions, the Lender Consent Condition has been waived and/or Landlord is estopped from relying upon it to renege performance under the Sixth Amendment.

51. Accordingly, all conditions to effectiveness of the Sixth Amendment have either been satisfied or waived, and/or Landlord is estopped from relying upon them, and the Sixth Amendment is a valid, binding and enforceable contract between SDI and Landlord.

52. Furthermore, under the doctrines of laches and part performance, Landlord is estopped from claiming that the Sixth Amendment is not enforceable. Even assuming that Landlord had at one time some sort of right to dispute enforceability of the Sixth Amendment (which Plaintiffs deny), Landlord's delay of over six (6) months to assert its positions is inexcusable. It is unreasonable and prejudicial for Landlord to only now assert rights contrary to the terms of the Sixth Amendment, after accepting SDI's performance for over six (6) months. The parties' history of performance confirms the enforceability of the Sixth Amendment.

53. Moreover, a bankruptcy court may estop a party from denying that it accepted the terms of an assumed contract where the party's conduct induced reliance by the other parties. Landlord's conduct in executing and delivering the Sixth Amendment induced SDI to direct the Debtors to assume and assign the Lease. SDI directed the Debtors to assume and assign the

Lease on the reasonable belief that Landlord would undertake its obligations under the Sixth Amendment, including obtaining lender consent, in good faith.

54. On information and belief, Landlord misrepresented its intent to seek its lender's consent so that it could later attempt to invalidate the Sixth Amendment and demand from Plaintiffs elevated rent payments.

55. Landlord should be estopped from claiming that the Sixth Amendment is unenforceable, in light of, among other things, its own misrepresentations and failure to make any effort whatsoever to obtain requisite consent from its lender, where all other conditions of the Sixth Amendment have been satisfied.

## **COUNT 2**

**(In the Alternative to Count 1, Vacate Assumption and Assignment of the Lease)**

56. Plaintiffs incorporate and re-allege the allegations set forth in paragraphs 1-55 above, as if fully set forth herein.

57. A bankruptcy judge has the power to reexamine and revise an order entered during the pendency of bankruptcy proceedings.

58. The Court has the power to rescind orders approving assumption of executory contracts and leases upon a showing that the order was obtained by fraud.

59. The Court may relieve a party from a final judgment, order, or proceeding for fraud, misrepresentation, or misconduct by another party pursuant to Federal Rule of Civil Procedure 60(b), made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 9024.

60. Plaintiffs proceeded in good faith under the terms of the Sale Order to identify the Lease for assumption by the Debtors and assignment to SDI, following negotiations with Landlord concerning the terms of the lease agreement going forward.

61. SDI negotiated in good faith with Landlord on the terms of the Sixth Amendment that would govern the parties' relationship going forward post-assignment.

62. Landlord participated in this Court-approved process -- it executed and delivered the Sixth Amendment, it received notice of the Assumption & Assignment Notice, and it accepted six (6) months of performance from SDI post-assignment.

63. Landlord now claims, in bad faith, that the Sixth Amendment does not exist and that Plaintiffs are obligated to perform under the pre-amendment terms of Landlord's Lease with the Debtors.

64. Plaintiffs never agreed to perform under the pre-amendment terms of Landlord's Lease with the Debtors.

65. Landlord never intended to honor the deal it made with SDI under the Sixth Amendment -- which amounts to fraudulent inducement -- warranting entry of an Order (supplementing and enforcing the Sale Order) vacating assumption and assignment of the Lease.

66. Under Connecticut law, the essential elements of an action in common law fraud are: (1) a false representation was made as a statement of fact; (2) it was untrue and known to be untrue by the party making it; (3) it was made to induce the other party to act upon it; and (4) the other party did so act upon that false representation to his injury. All four elements are satisfied here.

67. The first two elements of fraud under Connecticut law are satisfied because Landlord falsely represented that it intended to be bound by the terms of the Sixth Amendment, but Landlord knew that representation was untrue because it never actually intended to fulfill its good faith obligations to seek its lender's consent to satisfy the Lender Consent Condition. Landlord entered into the Sixth Amendment with knowledge of its duty to seek its lender's consent. Satisfaction of that condition was at all times entirely in Landlord's control, and yet Landlord took no action to try to satisfy it. And even when SDI learned that Landlord had taken no action to satisfy the Lender Consent Condition, SDI offered to assist, but Landlord refused to allow SDI to do so.

68. The final two elements of fraud under Connecticut law are also satisfied because Landlord induced SDI to accept assignment of the Lease based on Landlord's agreement to the Sixth Amendment, knowing SDI would have never agreed to the assumption and assignment of the Lease had it known that Landlord did not intend to honor its obligations under the Sixth Amendment. This is classic inducement because the evidence shows that Landlord never intended to honor the deal it made with SDI, SDI took action that it would have never taken absent Landlord's representations, and Landlord has now sued Plaintiffs for hundreds of thousands of dollars for claims based on lease terms Plaintiffs never agreed to.

69. Landlord never intended to fulfill its good faith obligations to seek its lender's consent to the Sixth Amendment, and instead fraudulently induced SDI to accept assignment of the Lease based on the false premise that Landlord would fulfill its obligations under the Sixth Amendment. At the time Landlord executed and delivered the Sixth Amendment, Landlord knew of its obligation to obtain its lender's consent; and yet did nothing. Landlord then

accepted SDI's performance under the Sixth Amendment for months before informing SDI that it had not obtained its lender's consent.

70. Only now, after allowing <u>six (6) months</u> to pass without seeking consent of its lender, Landlord has sued Plaintiffs for $329,977.21 in Connecticut state court. Clearly, Landlord could have raised its position the very first month that SDI paid $0.00 in rent versus the $31,000.00 in monthly rent that Landlord claims is owed. But instead Landlord lay in wait, allowed the claim to increase month over month, and now tries to collect from Plaintiffs a debt based on lease terms they never agreed to accept.

71. Landlord's actions negatively impact and implicate the integrity of this bankruptcy case and this Court's Orders governing the most important and valuable aspect of this case -- the Debtors' leases. Landlord induced SDI to accept assignment of the Lease under the false pretense that the parties' relationship would be governed under the Sixth Amendment, did nothing for months to suggest otherwise, and now tries to benefit from its subterfuge.

72. Landlord's inequitable conduct is further highlighted by the application of the doctrines of laches, waiver and part performance. Landlord's inexcusable delay in asserting that the Sixth Amendment is not enforceable is prejudicial because it has exposed Plaintiffs to a potentially significant claim that Plaintiffs would have been careful to avoid had they been aware of Landlord's position. SDI would not have remained in this store locations for months following assignment had it known of Landlord's position.

73. Indeed, Landlord's acceptance of SDI's performance over those months results in the waiver of any argument by Landlord that the Sixth Amendment is not enforceable due to any unsatisfied condition, and acceptance of SDI's part performance over those months establishes that Landlord is indeed bound by the terms of the Sixth Amendment.

Notwithstanding the enforceability of the Sixth Amendment, Plaintiffs have little choice but to seek to vacate assumption and assignment of the Lease given Landlord's untenable positions.

74. Accordingly, Plaintiffs respectfully request that this Court exercise its authority under Federal Rule of Civil Procedure 60(b) and its equitable authority to vacate assumption and assignment of the Lease pursuant to the Sale Order, thereby denying Landlord any benefit from its inequitable actions.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment granting the following relief:

1. A declaration that the Sixth Amendment is enforceable and governs the terms of the parties' relationship, or

2. In the alternative to paragraph 1, entry of an order vacating the Debtors' assumption of the Lease and assignment thereof to SDI, *nunc pro tunc* to the May 18, 2017 filing of the Assumption & Assignment Notice, and

3. In the event the Court vacates the Debtors' assumption of the Lease and assignment thereof to SDI, the allowance of a reasonable period of time (six (6) to eight (8) weeks, at Plaintiffs' election), to vacate the Premises, and

4. Such other and further relief, at law or in equity, as this Court deems just and proper.

[*signature follows*]

Dated: January 30, 2018
Wilmington, Delaware

Respectfully submitted,

/s/ Dennis A. Meloro
Dennis A. Meloro (DE Bar No. 4435)
1007 North Orange Street, Suite 1200
Wilmington, Delaware 19801
Telephone: (302) 661-7000
Facsimile (302) 661-7360
Email: melorod@gtlaw.com

-and-

Bryan E. Bates, Esq. (admitted *pro hac vice*)
DENTONS US LLP
Suite 5300
Atlanta, GA 30308
Telephone: (404) 527-4073
Facsimile: (404) 527-4198
Email: bryan.bates@dentons.com

*Counsel for Plaintiffs Sportsdirect.com Retail Ltd. and SDI Stores LLC*